**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| SHARON LEE, | CASE NO. 1:23-CV-02035 |
| Plaintiff, |  |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. |  |

Plaintiff Sharon Lee ("Plaintiff" or "Ms. Lee") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter is before the undersigned by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF Doc. 5.)

For the reasons set forth below, the Court **AFFIRMS** the Commissioner's final decision.

## I.    Procedural History

On January 8, 2021, Ms. Lee filed applications for Disability Insurance Benefits ("DIB") and SSI, alleging a disability onset date of December 14, 2016.[1] (Tr. 18.) Ms. Lee later amended her alleged onset date to January 8, 2021, and withdrew her DIB application. (Tr. 18-19, 43, 69-70.) She alleged disability due to COPD, asthma, back pain, sleep apnea, mental health issues, trouble breathing, pain, and memory issues. (Tr. 118, 128, 151, 163, 334.) Ms.

---

[1] Plaintiff previously filed applications for DIB and SSI that were denied. (Tr. 18, 85.) Those applications are not at issue in this case.

1

Lee's application was denied at the initial level (Tr. 148-56) and upon reconsideration (Tr. 159-63), and she requested a hearing (Tr. 164).  On February 9, 2022, a telephonic hearing was held (Tr. 63-81), but it was postposed and rescheduled to November 1, 2022, because of difficulties hearing the claimant (Tr. 40-62).

On November 18, 2022, an Administrative Law Judge ("ALJ") issued a partially favorable decision, finding Ms. Lee was not disabled prior to November 15, 2022, but became disabled on November 15, 2022, and continued to be disabled through the date of the decision. (Tr. 15-39.)  Ms. Lee sought review of the ALJ's decision by the Appeals Council.  (Tr. 273-74.) On August 22, 2023, the Appeals Council found no reason to review the decision, making the ALJ's November 18, 2022 decision the final decision of the Commissioner.  (Tr. 1-7.)

On October 17, 2023, Ms. Lee filed a Complaint challenging the Commissioner's final decision denying her social security disability benefits.  (ECF Doc. 1.)  The matter is fully briefed.  (ECF Docs. 9 & 11.)

## II.    Evidence

### A.    Personal, Educational, and Vocational Evidence

Ms. Lee was born in 1973.  (Tr. 277.)  She lived alone.  (Tr. 46.)  She obtained her GED in 2007.  (Tr. 47, 335.)  She had past work as a home health attendant and dietary aide.  (Tr. 29, 47, 72-74.)  She stopped working in 2011 due to her medical conditions.  (Tr. 334.)

### B.    Medical Evidence

Although the ALJ identified physical and mental impairments (Tr. 21), Ms. Lee focuses her arguments on the ALJ's findings regarding her physical impairments, including her use of a cane, a physical capacity opinion, and her complaints of pain (*see* ECF Doc. 9).  The evidence summarized herein is therefore focused on the evidence relevant to the physical impairments.

1.      **Relevant Treatment History**

i.      **Evidence Pre-Dating Alleged Onset Date**

Ms. Lee underwent two surgeries on her left foot relating to a 1994 gunshot wound, with

the last surgery occurring in 2019.  (Tr. 1081.)  On June 27, 2019, September 23, 2019 (Tr. 461-

65), and February 21, 2020 (Tr. 458-61), Ms. Lee presented to Schirron E. Campbell, PA-C at

the Cleveland Clinic Pain Management Clinic with complaints of low back and left foot pain.

She reported pain in her left foot since 1994 and back pain for six months.  (Tr. 459, 462, 466.)

She described the pain in her foot as aching and stabbing, and the pain in her back as aching.

(*Id.*)  Her pain worsened with sitting, standing, getting up from a sitting position, and walking.

(*Id.*)  Lying down and medication helped alleviate her pain.  (*Id.*)

At her February 21, 2020 visit, her physical examination findings included pain to

palpation over the lumbar spine and paraspinous muscles, increased pain in the back with

extension which was relieved with flexion, and positive left straight leg raise.  (Tr. 460.)  There

was extensive scarring from the skin graft and gunshot wound on the medial and plantar surface

of the left foot and extensive calluses on the plantar surfaces of both feet.  (*Id.*)  Ms. Lee was not

able to fully move her left ankle and her foot was tender to palpation in the area of scaring and

surgery.  (*Id.*)  Ms. Lee's gait was antalgic, and she used a cane for ambulation.  (*Id.*)  She

reported using a TENS unit daily and Voltaren gel.  (*Id.*)  An updated x-ray of the lumbar spine

was ordered, in addition to aqua therapy.  (*Id.*)  Ms. Lee was started on Cataflam, gabapentin was

continued, and ibuprofen was discontinued.  (*Id.*)

A lumbar spine x-ray taken on February 21, 2020, showed: low-grade anterolisthesis of

L3 on L4; mild narrowing of L3-L4, L4-L5, and L5-S1 with endplate hypertrophic changes; and

narrowing and sclerosis about the lower lumbar facet joints.  (Tr. 514-15).  No other significant abnormalities were observed.  (*Id*.)

### ii.  Evidence Post-Dating Alleged Onset Date

On May 5, 2021, Ms. Lee had an internal medicine telemedicine appointment with Amorkor Sogbodjor, M.D., at MetroHealth Medical Center.  (Tr. 1312.)  She complained of shortness of breath for more than a year.  (*Id*.)  During the visit, Ms. Lee had difficulty talking on the phone, took frequent pauses, and was fatigued with slight activity.  (*Id*.)  She requested a pulmonary medicine referral to be evaluated for oxygen.  (*Id*.)  She also requested a letter for an air conditioner and a handicap sticker.  (*Id*.)  Dr. Sogbodjor instructed Ms. Lee to schedule an in-person urgent care visit regarding her shortness of breath.  (*Id*.)

On June 30, 2021, Ms. Lee presented to Jianguo Cheng, M.D., at the Cleveland Clinic for a pain management follow-up appointment regarding her left foot pain.  (Tr. 1274-78.)  She reported continued persistent pain in her left foot; the pain was located over the entire foot, but greater on the left and more pronounced over the planter aspect of the foot near the great toe. (Tr. 1276.)  She was scheduled for surgery to remove bullet fragments over the plantar aspect of her left foot.  (*Id*.)  She continued to use a cane for ambulation.  (*Id*.)  On examination, Ms. Lee's breathing was unlabored.  (Tr. 1277.)  There was extensive scarring with a skin graft over the medial aspect of the heel.  (*Id*.)  Her motor strength and tone were 5/5 throughout and her sensation was intact to light touch.  (*Id*.)  Her gait was normal.  (*Id*.)  She reported relief with topical Voltaren and Cataflam, but said she had not been taking them because she ran out.  (*Id*.) Dr. Cheng provided refills for both medications.  (*Id*.)  Ms. Lee's diagnoses were lumbar spondylosis, neuropathic pain, left foot pain, and radicular pain of left lower extremity.  (*Id*.) She was instructed to have lab work and return to the pain management clinic as needed.  (*Id*.)

On August 6, 2021, Ms. Lee returned to Dr. Sogbodjor for a preventative care appointment.  (Tr. 1347-58.)  She complained of low back pain and left leg/thigh symptoms.  (*Id.*)  She reported compliance with her inhalers but complained of dyspnea on exertion and a productive cough for two months.  (Tr. 1347.)  She said she had been using a walker for four years.  (Tr. 1348.)  She walked slowly with a walker.  (Tr. 1350.)  Her weight had increased by approximately nine pounds since February 2020.  (*Id.*)  On examination, Ms. Lee moved all extremities with equal and appropriate strength diffusely.  (*Id.*)  There was no pitting edema in her extremities and her pulses were intact and symmetrical.  (*Id.*)  Dr. Sogbodjor prescribed a five-day antibiotic for a likely COPD exacerbation without wheezing on exam, ordered a disability placard, and instructed Ms. Lee to follow up in five weeks.  (Tr. 1351-52.)  He also referred Ms. Lee to physical therapy and physical medicine and rehabilitation for her chronic low back pain, and to a social worker for assistance with her request for an air conditioner.  (*Id.*)

On September 10, 2021, Ms. Lee presented for a telemedicine appointment with Dr. Sogbodjor.  (Tr. 1380-84.)  She had not scheduled appointments with physical therapy or physical medicine and rehabilitation.  (Tr. 1381.)  She reported feeling a little better after her five-day course of antibiotics, but still had a productive cough.  (*Id.*)  She had a pulmonary appointment scheduled for later that month.  (*Id.*)

Pulmonary function tests were performed on September 30, 2021.  (Tr. 1387-89.)  Ms. Lee had difficulty with the spirometry; the accuracy of the testing was limited due to the poor quality of the testing, but the spirometry "suggest[ed] the presence of restrictive ventilatory impairment.  However, obstructive ventilatory defect [could not] be excluded" and "[l]ung volume assessment [was] recommended to clarify the defect, if clinically indicated."  (Tr. 1387.)

On February 2, 2022, Ms. Lee was admitted to University Hospitals after slipping on an icy step while intoxicated and fracturing her left tibia/fibula.  (Tr. 1423, 1430.)  George Ochenjele, M.D., performed two surgeries to repair fractures in Ms. Lee's left lower leg.  (Tr. 1423, 1430, 1432.)  She was discharged on February 6, 2022.  (Tr. 1423.)

During a telehealth medication management session with Erin P. Murphy, APRN, CNP, at Circle Health Services on February 8, 2022, Ms. Lee reported she was having a difficult time since her recent surgeries.  (Tr. 1459.)  She said her mobility was very limited and she could "hardly get to the bathroom."  (*Id*.)  Her pain medication was making her sleepy.  (*Id*.)  She lived alone and was wheelchair bound, but her sister helped her when she could.  (*Id*.)

Ms. Lee presented to Dominic Maschari, PA-C, at University Hospitals for post-surgical follow up on March 1, 2022 (Tr. 1526-27) and March 29, 2022 (Tr. 1524-25).  Ms. Lee reported doing well.  (Tr. 1524, 1526.)  Physical examination findings were unremarkable and left ankle x-rays showed stable fixation and appropriate alignment.  (Tr. 1525, 1527.)  On March 29, 2022, it was noted that Ms. Lee should continue non-weight bearing activity with her left lower extremity in a boot and range of motion exercises.  (Tr. 1524.)  She requested narcotic pain medication.  (*Id*.)  Since PA Maschari was limited in his ability to prescribe narcotic pain medication beyond six weeks from surgery, he referred Ms. Lee to pain management.  (*Id*.)

On April 20, 2022, Ms. Lee presented to Salim Hayek, M.D., at University Hospitals for evaluation regarding her left lower leg pain.  (Tr. 1505-07.)  Ms. Lee rated her pain as a 10 out of 10 and said the pain was worse with weight bearing activity and better with Motrin and lying down.  (Tr. 1506.)  She had a brace on her leg and reported that her orthopedic doctor told her that her hardware would remain in place for the foreseeable future.  (*Id*.)  Dr. Hayek felt that Ms. Lee's persistent left lower extremity pain was likely due to complex regional pain syndrome,

noting that Ms. Lee endorsed "burning pain" and the examination showed discoloration of the left lower extremity with edema present and signs of deep tissue hyperalgesia.  (Tr. 1505.) Examination also revealed no gasping or shortness of breath, tenderness to palpation of the left lower extremity, normal musculoskeletal range of motion, a "grossly normal" gait, full motor strength in the upper and lower extremities, normal knee reflexes, normal sensation, and normal provocative testing.  (Tr. 1507.)  Dr. Hayek started Ms. Lee on a Prednisone taper, amitriptyline, and topiramate.  (Tr. 1505-06.)  A lumbar sympathetic block was planned, and Dr. Hayek recommended daily physical/occupational therapy exercises.  (*Id*.)

On May 10, 2022, Ms. Lee presented for post-surgical follow up to Dr. Ochenjele.  (Tr. 1522-23.)  Ms. Lee reported she was doing well and was not using narcotic pain medication. (Tr. 1522.)  She reported little pain in her ankle.  (*Id*.)  X-rays showed stable fixation and appropriate alignment.  (Tr. 1522, 1530-31.)  Dr. Ochenjele noted that Ms. Lee was healing well. (Tr. 1522.)  He indicated she would transition to weightbearing activity as tolerated in a regular shoe and wean out of the boot, and he provided a physical therapy referral for range of motion and strengthening exercises.  (*Id*.)  Her examination revealed decreased ankle dorsiflexion to 5 degrees and plantar flexion limited 30 degrees.  (Tr. 1523.)  She was able to perform straight leg raise, and her knee range of motion was 0-110 degrees.  (*Id*.)  Her calf was supple and nontender to palpation with no edema or erythema.  (*Id*.)

On June 7, 2022, Ms. Lee presented to Cristina Sanders, APRN-CNP, at MetroHealth for an internal telemedicine appointment.  (Tr. 1587-89.)  Ms. Lee reported she was attending physical therapy for her leg.  (Tr. 1589.)  She was requesting Boost to help her with the healing process and to help her gain weight.  (*Id*.)   CNP Sanders provided a nutrition referral.  (*Id*.)

### 2.    Relevant Opinion Evidence

#### i.    Treating Source

On August 6, 2021, Dr. Sogbodjor completed a form entitled "Medical Source Statement: Patient's Physical Capacity." (Tr. 1344-45 ("MSS").) Dr. Sogbodjor opined that Ms. Lee could occasionally lift/carry five pounds and frequently lift/carry ten pounds, stating in support that Ms. Lee used a walker and could not stand for long periods of time. (Tr. 1344.) Dr. Sogbodjor opined that Ms. Lee could stand/walk for four hours in an eight-hour day, and for two hours at a time, stating in support that Ms. Lee used a walker when walking and standing and fatigued very quickly. (*Id.*) Dr. Sogbodjor opined that Ms. Lee was not limited in her ability to sit. (*Id.*) Dr. Sogbodjor opined that Ms. Lee could: rarely stoop, crouch, and kneel; occasionally climb and balance; and frequently crawl. (*Id.*) In support, he said Ms. Lee required the use of a walker for long distances. (*Id.*) Dr. Sogbodjor opined that Ms. Lee could occasionally push/pull and could frequently reach and perform fine and gross manipulation, stating in support that Ms. Lee had difficulty maintaining balance without a walker for long periods of time. (Tr. 1345.)

Dr. Sogbodjor opined that Ms. Lee could not be around moving machinery due to her use of walker. (Tr. 1345.) Although he noted the Ms. Lee used a walker, he also indicated that she had not been prescribed a cane or walker. (*Id.*) Dr. Sogbodjor opined that Ms. Lee did not need to alternate positions between sitting, standing, or walking. (*Id.*) Dr. Sogbodjor rated Ms. Lee's pain as moderate and opined that her pain would cause absenteeism but would not interfere with concentration or take her off task. (*Id.*) Dr. Sogbodjor also opined that, outside of the standard half an hour lunch period and two 15 minutes breaks, Ms. Lee would require an additional hour of unscheduled rest time during an average day. (*Id.*) When asked to identify any additional

limitations that would interfere with Ms. Lee working eight hours a day, five days a week, Dr. Sogbodjor stated "using a walker to walk long distance and/or maintain balance." (*Id.*)

### ii.    Consultative Examiner

On June 11, 2021, Ms. Lee presented to Dorothy A. Bradford, M.D., for a consultative medical examination. (Tr. 1073-83.)  Ms. Lee reported she had a gunshot wound to the left foot in 1994 that resulted in two surgeries. (Tr. 1081.)  She said the last surgery was in in 2019 for a skin graft. (*Id.*)  She reported pain in her lower back and foot with weight bearing activity, and she said she used a cane for support. (*Id.*)

Ms. Lee exhibited full strength on examination, except for mildly reduced (4/5) strength in the left ankle with plantar flexion. (Tr. 1074.)  She exhibited full range of motion, except for decreased range of motion in her left ankle and foot.[2] (Tr. 1077-78.)  There was extensive scarring at the site of her skin graft, along the mid-to-lateral foot, with increased callus formation. (Tr. 1082.)  Straight leg testing was normal. (Tr. 1078.)  There was no spinal tenderness in the back, normal deep tendon reflexes, and no focal neurological deficits. (Tr. 1082.)  Ms. Lee's gait and station were uneven, and she favored her right side and used a cane. (Tr. 1075, 1078, 1082.)

The examination revealed the presence of rhonchi that cleared with coughing. (Tr. 1082.)  Spirometry testing showed severe obstruction that improved post-bronchodilation. (Tr. 1079, 1082.)  Dr. Bradford stated: "In my medical opinion [Ms. Lee's] exam and medical records support her allegations.  She has post traumatic arthritis in her foot, DJD of the lumbar spine without radiculopathy and severe COPD.  She uses a cane for support." ( Tr. 1082.)

---

[2] In one section of the report, it is noted that the decreased strength and range of motion was in the right ankle. (Tr. 1082.)  However, the reduced strength and range of motion was recorded as being present in the left ankle and foot. (Tr. 1074, 1077-78.)  The examination findings in the right ankle and foot were recorded as normal. (*Id.*)

### iii.    State Agency Medical Consultants

On June 16, 2021, state agency medical consultant Bradley Lewis, M.D., completed a physical RFC assessment.  (Tr. 122-24.)  Dr. Lewis opined that Ms. Lee would be able to: occasionally lift and/or carry ten pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk for a total of two hours; and sit about six hours in an eight-hour workday; but she needed a cane for ambulating distances greater than 100 feet.  (Tr. 122.)  Dr. Lewis opined that Ms. Lee had the following postural limitations: never climb ladders/ropes/scaffolds; and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs.  (Tr. 122-23.)  Dr. Lewis also opined that Ms. Lee would need to: avoid concentrated exposure to extreme cold, heat, humidity, and fumes, odors, dusts, gases, and poor ventilation; and avoid all exposure to hazards such as machinery and heights.  (Tr. 123.)  On August 27, 2021, state agency medical consultant Lynee Torello, M.D., completed a physical RFC assessment upon reconsideration and affirmed Dr. Lewis's physical RFC assessment.  (Tr. 132-34.)

### C.    Plaintiff's Testimony and Function Report

### 1.    Plaintiff's Testimony

At the November 1, 2022 hearing, Ms. Lee testified in response to questioning by the ALJ and her attorney.[3]  (Tr. 46-57.)  She said on a typical day she would watch television, stay home alone, lay down to stretch her legs out, and sometimes sit up.  (Tr. 47.)  She said she could not work at a job where she had to sit most of the time because of pain in her left leg and back pain, and because she would have to elevate her leg a lot.  (Tr. 48.)  She said she was scheduled to restart physical therapy for her leg and back and had been using a TENS unit for her back for a

---

[3] A telephonic hearing was also conducted on February 9, 2022.  (Tr. 70-80.)  However, the ALJ stopped and rescheduled that hearing because the ALJ was having difficulty hearing Ms. Lee.  (Tr. 77-80.)  The hearing was rescheduled to November 1, 2022, and was conducted in person.  (Tr. 42.)

couple of years. (Tr. 49.) She reported feeling stressed out because of her leg and losses in her family. (Tr. 50.)

Ms. Lee testified that she had suffered a gunshot wound in her left foot and a subsequent fracture to her left leg when she fell on the ice in February 2022. (Tr. 51-52.) She had screws and rods in her knee, leg, and ankle. (*Id*.) She said that the pain in her leg and her balance had gotten worse between 2019, when she had a hearing on her prior social security disability application, and February 2022, when she broke her leg. (Tr. 52.) She testified that she used a cane to help her walk, balance, and get up even before she broke her leg in February 2022. (Tr. 53.) She had drop foot on the left, which she explained resulted from the skin graft that was performed to fill the hole in her foot and "was like a big hump on [her] foot for many years and [her] drop foot [was] like [her] arch [was] not there." (Tr. 54.) When she walked around, she said her drop foot made it feel like she was walking on rocks or bricks. (*Id*.) She described the pain in her left foot prior to breaking her left leg as follows: "It's more like a hurting, sometimes it hurts, and sometimes it feel[s] like somebody just poking me, like stabbing me, like I get these sharp pains to make me jump," and she said the pain was "[a] lot worse" now. (Tr. 55.)

## 2.    Plaintiff's Function Report

As part of her disability application, Ms. Lee submitted a Function Report, reporting the following.[4] (Tr. 341-48.)

- she lived alone, but her family assisted her with chores and cooking, and sometimes they assisted her with dressing and grocery shopping (Tr. 341-43);

- she usually spent her days at home watching television (Tr. 342);

- she had problems sleeping due to constant pain and other health related issues (*id*.);

---

[4] The form appears to have been completed on Ms. Lee's behalf by an individual named Sharon Barfield. (Tr. 348.) The form is dated September 1997, which is likely Ms. Barfield's date of birth rather than the date the form was completed.

- she needed assistance getting in and out of the bathtub due to pain in her back and foot (*id.*);

- she needed assistance at times getting up from the toilet and getting out of bed (*id.*);

- lifting her arms above her head caused constant pain in her back (*id.*);

- she had to lie down and elevate her feet at times (Tr. 343);

- she missed out on a lot of activities due to her pain, mental illness, and medical issues (*id.*);

- she was limited in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others; (Tr. 344);

- she could not lift more than five pounds (*id.*);

- she could not walk, sit, or stand more than two minutes (Tr. 344, 345);

- she could walk twenty-five feet before needing to stop and rest for five to ten minutes before walking again (Tr. 344);

- she could not go places on her own because of pain and anxiety (Tr. 346); and

- she used a cane, brace, and TENS unit (Tr. 347).

## D.    Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the November 1, 2022 hearing.  (Tr. 57-60.)  The VE classified Ms. Lee's past work as: home health attendant (medium, SVP 3) and dietary aide (medium, SVP 2).  (Tr. 47.)  The VE testified that an individual with the functional limitations described in the ALJ's RFC determination, which included use of a cane or ambulating distances greater than 100 feet (Tr. 23-24, 58-59),[5] could not perform Ms. Lee's past work but could perform the following representative sedentary, SVP 2 positions: sorter, small parts; document preparer; and address clerk.  (Tr. 59.)  The VE testified there would be no work available if the

---

[5] Although not material to the disposition of Plaintiff's assignments of error, the Court notes that the ALJ's RFC as stated in the decision differs slightly from the VE hypothetical.  (*See* ECF Doc. 11, p. 7 n. 4 (Defendant's brief, noting that in the decision the RFC states "and serving," whereas, the VE hypothetical refers to "and answering").)

RFC was modified to state that a cane was needed for ambulation and balance.  (Tr. 60.)  The VE clarified that requiring a cane for ambulation was not work preclusive, but requiring a cane for balance was work preclusive.  (*Id.*)

### III.    Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1.    If the claimant is doing substantial gainful activity, he is not disabled.

2.    If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.    If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4.    If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work.  If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987).  Under this

sequential analysis, the claimant has the burden of proof at Steps One through Four.  *See Walters*

*v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the

Commissioner at Step Five to establish whether the claimant has the Residual Functional

Capacity ("RFC") and vocational factors to perform other work available in the national

economy.  *Id.*

## IV.  The ALJ's Decision

In his November 18, 2022 decision, the ALJ made the following findings:[6]

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.  (Tr. 21.)

2.  The claimant has not engaged in substantial gainful activity since January 8, 2021, the alleged onset date.  (*Id.*)

3.  Since the alleged onset date of disability, January 8, 2021, the claimant has the following severe impairments: status post gunshot wound to the left foot; open reduction internal fixation changes of distal tibia fracture, tibial plafond fracture, and of distal fibular fracture; COPD; degeneration of the lumbar spine; ankylosing spondylitis; obstructive sleep apnea; depressive disorder; anxiety disorder; and PTSD.  (*Id.*)

4.  Since January 8, 2021, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 21-23.)

5.  Since January 8, 2021, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally.  The claimant can

---

[6] The ALJ's findings are summarized.

never work at unprotected heights; can never operate dangerous moving machinery.  Exposure to frequent heat, cold, humidity, wetness, dusts, odors, fumes, and pulmonary irritants.  The claimant can understand, remember, carry out, and complete simple routine work.  The claimant can adapt to superficial interactions with supervisors and coworkers defined as no mentoring or conflict resolution but can do speaking signaling, asking questions, and serving.  The claimant can provide no direct services to the general public.  The claimant requires the use of a cane for ambulating distances greater than 100 feet. (Tr. 23-29.)

6.   Since January 8, 2021, the claimant has been unable to perform any past relevant work. (Tr. 29.)

7.   Prior to the established disability onset date, the claimant was a younger individual age 45-49.  On November 15, 2022, the claimant's age category changed to an individual closely approaching advanced age. (*Id*.)

8.   The claimant has at least a high school education. (*Id*.)

9.   Prior to November 15, 2022, transferability of job skills is not material to the determination of disability. (*Id*.)  Beginning on November 15, 2022, the claimant has not been able to transfer job skills to other occupations. (*Id*.)

10.  Prior to November 15, 2022, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, including small parts sorter, document preparer, and address clerk. (Tr. 29-30.)

11.  Beginning on November 15, 2022, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform. (Tr. 30-31.)

Based on the foregoing, the ALJ determined that Ms. Lee was not disabled prior to November 15, 2022, but became disabled on that date and continued to be disabled through the date of the decision and her disability was expected to last twelve months past the onset date. (Tr. 31.)  The ALJ also determined that Ms. Lee was not under a disability within the meaning of the Social Security Act at any time through December 31, 2016, the date last insured. (*Id*.)

15

## V. Plaintiff's Arguments

Plaintiff presents three assignments of error.  First, she argues that the ALJ erred by failing to adopt an RFC requiring the use of a cane for balance.  (ECF Doc. 9, pp. 1, 13, 14-16.)  Second, she argues that the ALJ erred in finding the opinion of Dr. Sogbodjor unpersuasive.  (*Id.* at pp. 1, 13, 16-19.)  Third, she argues that the ALJ erred in evaluating her subjective reports of pain.  (*Id.* at pp. 1, 13, 19-21.)

## VI. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  "'The substantial-evidence standard . . . presupposes that there is a

zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-547 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**B.      First Assignment of Error: The Physical RFC Limitations Relating to the Use of a Cane Were Supported By Substantial Evidence**

In her first assignment of error, Ms. Lee argues that the ALJ erred when he adopted an RFC that did not require "a cane for balance," but did require the use of a cane to ambulate distances greater than 100 feet. (ECF Doc. 9, pp. 14-16.) She asserts that "the medical evidence demonstrates that the cane was needed for overall balance – not just distances greater than 100 feet," and that the "distance of 100 feet was simply arbitrarily chosen by the ALJ, and not supported by substantial evidence." (*Id*. at p. 14.) The Commissioner responds that the RFC

17

"properly accounted [for] Plaintiff's need for a cane by requiring a cane for ambulating greater than 100 feet" and was supported by substantial evidence.  (ECF Doc. 11, pp. 8-11.)

The Sixth Circuit has explained that a cane "cannot be considered an exertional limitation" in an RFC if the cane "was not a necessary device for claimant's use."  *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002).  Under Social Security Ruling ("SSR") 96-9p, an ALJ may only find a cane to be medically necessary where the record contains "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  SSR 96-9p, 61 Fed. Reg. 34478, 34482 (July 2, 1996).

Under the first SSR 96-9p requirement, the record must contain medical documentation of "the need for a hand-held assistive device to aid in walking or standing," not simply notations that a claimant was observed using an assistive device.  61 Fed. Reg. at 34482; *see Barnes v. Comm'r of Soc. Sec.*, No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (collecting cases) ("[T]he fact that various physicians noted Mr. Barnes' use of a cane or a walker does not establish that an assistive device was medically necessary for purposes of SSR 96-9p."); *Phillips v. Comm'r of Soc. Sec.*, No. 5:20-CV-01718-CEH, 2021 WL 5603393, at *10 (N.D. Ohio Nov. 30, 2021) ("Although various medical records note that Claimant presented at appointments using a cane, these notations do not meet the requirements of SSR 96–9p.").

Under the second SSR 96-9p requirement, the record must contain medical documentation "describing the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)," not simply a prescription for an assistive device.  61 Fed. Reg. at 34482; *see*

*Barnes*, WL 2988346, at \*8 (collecting cases).  This is consistent with the Seventh Circuit's holding that SSR 96–9p requires an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary."  *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012); *see also Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) ("[T]he legal issue does not turn on whether a cane was 'prescribed' for Spaulding, but whether a cane was 'medically required.'); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding prescription and references to use of cane without discussion of medical necessity to be insufficient to show medical necessity).

Here, Ms. Lee argues that "[t]he need for a cane has been repeatedly identified by physicians and in fact, Ms. Lee regularly uses a cane."  (ECF Doc. 9, pp. 14-15.)  In support, she points to the following evidence:

- Exams showing persistent left foot pain and scarring due to skin grafts (*id.* at p. 14 (citing Tr. 460, 464, 467, 1276-77);

- Exams noting decreased range of motion in the left ankle and/or big toe (*id.* (citing Tr. 460, 464, 467, 1074, 1077-78));

- Exams noting left foot drop and antalgic gait (*id.* (citing Tr. 460, 464, 467, 471)); and

- Consultative examiner Dr. Bradford's observations that Ms. Lee had an uneven gait that favored the right and used a cane[7] (*id.* at p. 15 (citing Tr. 1075, 1082)).

Ms. Lee also points out that Dr. Sogbodjor's physical capacity opinion comments on her use of, and need for, a walker.  (*Id.*)  Dr. Sogbodjor's notes indicate that:

- Ms. Lee "uses a walker + cannot stand for long periods of time" (Tr. 1344);

---

[7] Ms. Lee asserts: "Dr. Bradford stated that a cane was needed for uneven surfaces and for support."  (ECF Doc. 9, p. 15 (citing Tr. 1075, 1082).)  That is not an accurate characterization of Dr. Bradford's report.  On the first cited page, Dr. Bradford responded to the following question: "DESCRIBE GAIT AND STATION: If an assistive device is used for ambulation, comment on its medical necessity and the patient's ability to walk without it."  (Tr. 1075.)  Dr. Bradford's hand-written response—"Uneven, favors R, cane"— describes her gait and station without making a clear finding as to medical necessity.  (*Id.*)  In the second cited page, Dr. Bradford's physical examination notes state "Gait is uneven favors the right. Cane for support," and her assessment again notes "She uses a cane for support."  (Tr. 1082.)  These are observations from a physical examination, not explicit findings of medical necessity.

- she "uses a walker when walking + standing" and "[f]atigues very quickly" (*id.*);

- she "[r]equires use of a walker for long distance" (*id.*);

- she has "[d]ifficulty maintaining balance without a walker for long periods of time" and "uses a walker" (Tr. 1345); and

- "additional limitations" that would interfere with Ms. Lee's ability to work include "[u]sing a walker to walk long distance and/or maintain balance" (*id.*).

Considering this evidence, Ms. Lee asserts that the ALJ erred by not adopting an RFC that also required Ms. Lee to use a cane for balance, arguing "[g]iven that a walker is more restrictive than a cane, the multiple medical sources stating a walker or cane is necessary warranted a far more restrictive RFC on the issue of a cane."  (ECF Doc. 9, p. 15.)

Before adopting the relevant RFC, the ALJ explicitly considered: Ms. Lee's subjective reports of leg pain, pain when walking, and difficulty standing for long periods (Tr. 24); the objective findings in her treatment records, including a reduced range of motion in her foot, scarring due to a skin graft, a gait that was sometimes uneven and sometimes normal, and her observed use of a cane (Tr. 25-26); her reports to her providers that she suffered leg pain and used a cane (*id.*); the medical opinions of the state agency medical consultants that Ms. Lee would require the use of a cane for distances greater than 100 feet (Tr. 27); Dr. Sogbodjor's checklist medical opinion, which said Ms. Lee needed to use a walker for long distances and/or to maintain balance (Tr. 27-28); and the medical opinion of consultative examiner Dr. Bradford, who observed that Ms. Lee used a cane for support (Tr. 27).  Having considered all of that evidence, the ALJ provided the following explanation for the physical RFC limitations:

> Physically, the claimant noted that she is unable to work due to her left leg, and the residual effects of a gunshot wound. She noted that she cannot sit for long periods due to her back and leg. She has pain when walking. She cannot stand for long periods either. She noted that she needs help getting in and out of the tub. She can walk 25 feet before needing to rest 5-10 minutes. Views of the left ankle showed open reduction internal fixation changes of distal tibia fracture, tibial plafond fracture, and of distal fibular fracture, without hardware complication. A

pulmonary function test suggested the presence of restrictive ventilatory impairment. <u>These findings support the less than sedentary level above</u>. The environmental limitations are supported by the claimant's COPD. <u>The exertional level and postural limitations are supported by the combination of the claimant's musculoskeletal impairments</u>. <u>The undersigned has noted that the claimant needs a cane; however, only for distances greater than 100 feet</u>. Physical exams noted that the claimant had an antalgic gait, but gait was grossly normal. Examination of the muscles/joints/bones show normal range of motion. Gait was grossly normal. motor strength was 5/5 in the lower extremities bilaterally and equal. <u>The record does not support the need for an ambulatory device for balancing or constant use</u>.  A more limited physical RFC is not supported by the record.

(Tr. 28 (emphasis added).)

Turning to the first requirement under SSR 96-9p—the need for medical documentation of "the need for a hand-held assistive device to aid in walking or standing," 61 Fed. Reg. at 34482—a review of the ALJ's decision reveals that he largely considered and relied on the same subjective complaints, clinical findings, and medical opinions highlighted in Ms. Lee's brief to support an RFC requiring the use of a cane only for distances greater than 100 feet.  The evidence considered by the ALJ included the medical opinions of the state agency consultants and Dr. Sogbodjor regarding her need for a cane or walker in certain circumstances.  (Tr. 27.)

Turning to the second requirement under SSR 96-9p—the need for medical documentation "describing the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)," 61 Fed. Reg. at 34482—a review of the ALJ decision reveals that he considered Dr. Sogbodjor's opinion that Ms. Lee "requires a walker for long distances" and the state agency consultants' opinions that Ms. Lee would need "a cane for ambulating distances greater than 100 feet" (Tr. 27) before adopting an RFC limitation mirroring the state agency opinions (Tr. 28). Although Dr. Sobbodjor opined that Ms. Lee's limitations included "[u]sing a walker to walk long distance *and/or maintain balance*" (Tr. 1345 (emphasis added)), the ALJ found the opinion

21

"unpersuasive" and explained the reasons for his finding (Tr. 27-28).[8]   The ALJ also explicitly

described the clinical findings he relied on in determining that "[t]he record does not support the

need for an ambulatory device for balancing or constant use."  (*Id.*)

Ms. Lee argues that the ALJ's findings were in error because "the medical evidence

demonstrates that the cane was needed for overall balance – not just distances greater than 100

feet."  (ECF Doc. 9, p. 14.)  But the question before this Court is not whether Ms. Lee can

identify evidence to support greater limitations.  Even if substantial evidence supports greater

limitations, this Court cannot overturn the ALJ's finding to the contrary "so long as substantial

evidence also supports the conclusion reached by the ALJ."  *Jones*, 336 F.3d at 477.  Since the

ALJ considered the relevant evidence and medical opinions, adequately explained his findings,

and made findings consistent with the applicable regulatory standards, the Court finds Ms. Lee

has not met her burden to show that the ALJ lacked substantial evidence to support his RFC.

Ms. Lee also argues that the RFC limitation adopted by the ALJ was "simply arbitrarily

chosen by the ALJ, and not supported by substantial evidence."  (ECF Doc. 9, p. 14.)  The

Commissioner responds that the 100 foot distance is not arbitrary, given that "the ALJ relied on

the prior administrative medical findings of state agency medical consultants."  (ECF Doc. 11, p.

10 (citing Tr. 27).)  The Court agrees.  Since SSR 96-9p requires medical documentation

describing the circumstances in which an assistive device is needed, specific medical findings of

that nature are clearly relevant, and potentially necessary, to support a finding of medical

necessity.  61 Fed. Reg. at 34482; *see Tripp*, 489 F. App'x at 955 (finding SSR 96-9p requires an

---

[8] Ms. Lee challenges the ALJ's analysis of Dr. Sogbodjor's opinion in her second assignment of error.  (*See* ECF Doc. 9, pp. 16-19.)  For the reasons set forth in section VI.C., *infra*, the Court finds Ms. Lee's second assignment of error lacks merit.

"unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary").

For the reasons set forth above, the Court finds Ms. Lee has not met her burden to show that the RFC cane limitation adopted by the ALJ lacked the support of substantial evidence. Accordingly, the Court finds Ms. Lee's first assignment of error is without merit.

**C.     Second Assignment of Error: The ALJ Appropriately Analyzed the Persuasiveness of Dr. Sogbodjor's Medical Opinion**

In her second assignment of error, Ms. Lee asserts that the ALJ's analysis of the persuasiveness of Dr. Sogbodjor's opinion was flawed because his reasoning was inconsistent. (ECF Doc. 9, pp. 16-19.)  Specifically, she notes that the ALJ found the limitations in the medical opinion "mostly consistent with the record," and argues that finding as to "consistency" should have been "the favored rationale" the ALJ relied on in assessing the persuasiveness of the opinion.  (*Id.* at p. 16 (citing Tr. 27).)  She highlights the evidence in the record that supported and was consistent with Dr. Sogbodjor's stated limitations and argues that the ALJ "did not explain this dichotomy with finding the opinion consistency [sic] but then rejecting it."  (*Id.* at pp. 17-18.)  The Commissioner responds that the ALJ properly evaluated the opinion of Dr. Sogbodjor in accordance with the regulations.  (ECF Doc. 11, pp. 11-14.)

Under the Social Security Administration's ("SSA") regulations for evaluating medical opinion evidence, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 416.920c(a); *see Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *5 (6th Cir. June 12, 2024) (quoting 20 C.F.R. § 404.1520c(a)).  They are required to evaluate the "persuasiveness" of medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5)" of the regulation.  20 C.F.R. § 416.920c;

23

*see Jones v. Comm'r of Soc. Sec.*, No. 3:19-CV-01102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020).  The five factors to be considered are supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 416.920c(c)(1)-(5).  The most important factors are supportability and consistency.  20 C.F.R. §§ 416.920c(a), 416.920c(b)(2).  ALJs must explain how they considered consistency and supportability, but need not explain how they considered the other factors.  20 C.F.R. § 416.920c(b)(2).

As to supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  In other words, "supportability" is the extent to which a medical source's own objective findings and supporting explanations substantiate or support the findings in the opinion.

As to consistency, the regulations state: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).  In other words, "consistency" is the extent to which a medical source's opinion findings are consistent with the evidence from other medical and nonmedical sources in the record.

The ALJ evaluated the persuasiveness of Dr. Sogbodjor's opinion as follows:

[T]he checklist type form completed by Dr. Amorkor Sogbodjor is also unpersuasive. She noted the claimant would be able to occasionally lift 5 pounds, frequently lift 10 pounds. [T]he claimant could stand 4 hours and would have no sitting limitations. She noted that the claimant requires use of a walker for long distances. (13F/11-12). While the limitations are mostly consistent with the record, this form also contains no narrative or objective medical findings in order to support the conclusions. It is unclear if this form was completed based on subjective allegations alone, or the objective medical file. As noted above, the undersigned

> finds more persuasive specific residual functional findings that are supported by
> clear evidence in the medical file. Because this form lacks support for its findings,
> it is unpersuasive.

(Tr. 27-28 (emphasis added).)

Having reviewed the ALJ's analysis, the Court concludes that the ALJ appropriately
considered the consistency and supportability of Dr. Sogbodjor's opinion and adequately
explained how he considered those factors.  *See* 20 C.F.R. §§ 416.920c(a); 416.920c(b)(2).

As to supportability—the extent to which a medical source's own objective findings and
supporting explanations substantiate or support the findings in the opinion—the ALJ accurately
observed that Dr. Sogbodjor's opinion was a "checklist type form" containing "no narrative or
objective medical findings . . . to support the conclusions," and further that it was "unclear if
th[e] form was completed based on subjective allegations alone, or the objective medical file."
(Tr. 27-28.)  "As a general matter, an ALJ may properly give little weight to a medical source's
check-box form of functional limitations when it does not cite clinical test results, observations,
or other objective findings."  *Kreilach v. Comm'r of Soc. Sec.*, 621 F. Supp. 3d 836, 847 (N.D.
Ohio 2022) (citing *Ellars v. Commissioner of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016)
(collecting cases)).  Although Ms. Lee acknowledges these findings, her only response is an
assertion that "the question remains as to why the value of 'consistency' wasn't the favored
rationale."  (ECF Doc. 9, p. 16.)  She does not identify authority requiring consistency to be
"favored" over supportability, and the ALJ explained that he "finds more persuasive specific
residual functional findings that are supported by clear evidence in the medical file."  (Tr. 28.)

As to consistency—the extent to which a medical source's opinion findings are consistent
with the evidence from other medical and nonmedical sources in the record—the ALJ noted that
Dr. Sogbodjor's opinion included findings that Ms. Lee could "occasionally lift 5 pounds,

frequently lift 10 pounds, . . . stand 4 hours and would have no sitting limitations," and "require[d] the use of a walker for long distances," and observed that those limitations were "mostly consistent with the record." (Tr. 27.) Ms. Lee argues that this observation—in the context of a finding that Dr. Sogbodjor's opinion was unpersuasive—created an inconsistency in the ALJ's reasoning. (ECF Doc. 9, p. 16.) The Court disagrees. Looking at the opinion findings summarized by the ALJ, which related to Ms. Lee's ability to lift, sit, stand, and walk long distances, it is evident that the ALJ adopted similar RFC limitations. Specifically, he limited Ms. Lee to the performance of sedentary work, which is consistent with or more limited than the lifting, sitting, and standing limitations in Dr. Sogbodjor's opinion (Tr. 23, 27; *see* Tr. 1344); and found Ms. Lee needed a cane to ambulate distances greater than 100 feet, which is parallel to Dr. Sogbodjor's finding that she needed a walker for "long distances" (Tr. 24, 27; *see* Tr. 1344-35).

On the whole, the ALJ's acknowledgment that Dr. Sogbodjor's limitations were "mostly consistent with the record" was accurate, logical, and appropriate in light of the fact that the ALJ adopted an RFC that was largely consistent with those stated limitations.[9] But that observation was not inconsistent with the ALJ's additional finding that the opinion was unpersuasive because it was a check-box form that contained "no narrative or objective medical findings," making it "unclear if th[e] form was completed based on subjective allegations alone, or the objective medical file." (Tr. 27-28.) Effectively, the ALJ explained that he did not rely on the opinion because of its lack of supportability, but nevertheless noted that many of the limitations were consistent with the record. Ms. Lee has failed to show that the ALJ's analysis was inconsistent, and has likewise not met her burden to show that the ALJ failed to adequately articulate the basis for his ultimate finding that the opinion was unpersuasive.

---

[9] Notably, the physical RFC was also consistent with the medical opinions of the state agency medical consultants, whose opinions the ALJ found to be persuasive. (Tr. 23-24, 27; *see* Tr. 122-24, 132-34.)

Ms. Lee also argues that Dr. Sogbodjor's opinion was supported by and consistent with the medical record, citing to various records in support of this argument.  (ECF Doc. 9, pp. 17-18.)  But the question before this Court is not whether there is substantial evidence to support Plaintiff's preferred findings; the question is whether the ALJ *lacked* substantial evidence to support his contrary findings.  *See Jones*, 336 F.3d at 477.  As the ALJ observed, Dr. Sogbodjor did not cite to any of the records now highlighted by Ms. Lee as support for his opinions.  (Tr. 27-28.)  And the ALJ's decision reflects that he considered the subjective complaints, medical records, and medical opinions in making the challenged findings.  (*See* Tr. 24-29.)

While Ms. Lee disagrees with the ALJ's assessment of Dr. Sogbodjor's opinion, she has not shown that the ALJ's persuasiveness finding lacks the support of substantial evidence.  For the reasons set forth above, the Court finds the ALJ clearly articulated his reasons for finding Dr. Sogbodjor's opinion unpersuasive, and his determination was supported by substantial evidence.  Accordingly, the Court finds Ms. Lee's second assignment of error is without merit.

**D.      Third Assignment of Error: The ALJ Adequately Considered Plaintiff's Subjective Allegations of Pain**

In her third assignment of error, Ms. Lee argues the ALJ failed to perform an appropriate analysis of her allegations of pain.  (ECF Doc. 9, pp. 19-21.)  Specifically, she asserts that the ALJ "failed to clearly state his reasons for discounting [her] allegations of disabling pain" (*id.* at p. 20) and "simply failed to perform any analysis of [her] pain" (*id.* at p. 21).  She also argues that the ALJ failed to address Dr. Hayek's diagnosis of complex regional pain syndrome in her lower extremity or the post traumatic arthritis in her left foot.  (ECF Doc. 9, pp. 20-21.)  The Commissioner argues that the ALJ properly considered Ms. Lee's subjective allegations, and that his findings had the support of substantial evidence.  (ECF Doc. 11, pp. 14-17.)

As a general matter, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d at 476; *see also Alexander v. Kijakazi*, No. 1:20-cv-1549, 2021 WL 4459700, *13 (N.D. Ohio Sept. 29, 2021) ("An ALJ is not required to accept a claimant's subjective complaints.") (citing *Jones*, 336 F.3d at 476); see also 20 C.F.R. § 404.1529(a) and SSR 16-3p, *Evaluation of Symptoms in Disability Claims*, 82 Fed Reg. 49462, 49463 (Oct. 25, 2017) (explaining that a claimant's statements of symptoms alone are not sufficient to establish the existence of a physical or mental impairment or disability).

Under the two-step process used to assess the limiting effects of a claimant's symptoms, a determination is first made as to whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *See* SSR 16-3p, 82 Fed Reg. 49462, 49463; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). If that requirement is met, the second step is to evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. *See* SSR 16-3p, 82 Fed Reg. 49462, 49463; *Rogers,* 486 F.3d at 247. There is no dispute that the first step is met in this case (Tr. 24-25), so the discussion herein focuses on the ALJ's compliance with the second step.

A review of the written decision reveals that the ALJ considered the whole record, based his findings on relevant factors, and provided "specific reasons for the weight given to the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467. He considered Ms. Lee's allegations of pain affecting her ability to sit, stand, walk, and go out alone (Tr. 24, 28), but found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not fully supported" and "only partially consistent with both the objective and

subjective evidence of record, because the treatment notes do not show the serious symptoms and dysfunction that would be expected were the claimant as limited as alleged" (Tr. 24-25).  He described Ms. Lee's treatment records and clinical findings from 2020 through 2022, acknowledging her reports of pain to providers, her treatment with pain medication, her spinal x-rays showing degenerative changes and scoliosis, the evidence of a left tibia/fibula fracture corrected with external fixation, and various abnormal physical examination findings that included mild decreased strength and range of motion in the ankle with extensive scarring, uneven gait, and edema.  (Tr. 25-26.)  The ALJ found the state agency medical opinions to be persuasive and consistent with Ms. Lee's antalgic but "grossly normal" gait and various normal physical examination findings.  (Tr. 27.)  He found the opinion of Dr. Sogbodjor to be "mostly consistent with the record," but highlighted Dr. Sogbodjor's failure to identify objective medical evidence to support his findings.  (Tr. 27-28.)  And the ALJ found the opinion of the consultative examiner to be unpersuasive because it offered no opinion as to residual functioning, but found the objective examination findings to be helpful.  (Tr. 28.)  Finally, the ALJ again acknowledged the subjective complaints and explained the basis for his final RFC determination.  (*Id.*)

In this context, Ms. Lee's argument that "the ALJ failed to clearly state his reasons for discounting Ms. Lee's allegations of disabling pain" is not well taken.  (ECF Doc. 9, p. 20.)  Indeed, the ALJ explicitly considered many of the subjective complaints, objective findings, and treatment modalities highlighted in Plaintiff's brief.  (*Compare id. with* Tr. 25-26.)  Ms. Lee also asserts that the ALJ "did not address the fact that Dr. Hayek diagnosed complex regional pain syndrome, type one, affecting Ms. Lee's left lower extremity."  (ECF Doc. 9, pp. 20-21.)  But the ALJ acknowledged Dr. Hayek's opinion that Ms. Lee's lower extremity pain was likely due to complex regional pain syndrome, while also noting largely normal examination findings at that

visit.  (Tr. 26, 1505, 1507.)  Ms. Lee also asserts that the ALJ did not consider the post traumatic arthritis in her left foot.  (ECF Doc. 9, p. 21.)  But the ALJ identified "status post gunshot wound to the left foot" as a severe impairment (Tr. 21), acknowledged abnormal examination findings for the left foot, plans for a revision left foot surgery, and pain management treatments (Tr. 25), and noted Dr. Bradford's diagnosis of post traumatic arthritis of the foot (Tr. 28).

Ultimately, Ms. Lee is asking this Court to reconsider the evidence that was already considered and weighed by the ALJ.  But it is not this Court's role to "try the case *de novo*, . . . resolve conflicts in evidence, []or decide questions of credibility."  *Garner*, 745 F.2d at 387. This Court may only consider whether the ALJ's findings were supported by substantial evidence.  Even if substantial evidence supported Ms. Lee's interpretation of the evidence, this Court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones*, 336 F.3d at 477.

For the reasons set forth above, the Court finds the ALJ adequately considered Ms. Lee's subjective allegations in the context of the record as a whole, and that the ALJ's finding that Ms. Lee's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record was supported by substantial evidence. Accordingly, the Court finds Ms. Lee's third assignment of error is without merit.

### VII.    Conclusion

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's final decision.

March 24, 2025

                              */s/Amanda M. Knapp*
                              AMANDA M. KNAPP
                              United States Magistrate Judge

30